DeBlois v. Walter                          CV-97-389-JD  06/10/98
               UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Wayne R. DeBlois

        v.                               Civil No. 97-489-JD

Richard Walter, et al.


                          O R D E R


     The plaintiff and the defendants have filed cross-motions

for summary judgment (documents no. 8 and 9 respectively).

     The plaintiff, Wayne R. DeBlois, commenced this action in

the Merrimack County Superior Court against three defendants:

Richard Walter, individually and in his capacity as a police

officer for the town of Chichester ("town"); Ann Emerson,

individually and in her capacity as police chief for the town;

and the town itself.  In count one the plaintiff claims that

Walter, acting under color of state law, deprived him of his

rights under the United States Constitution by wrongfully

imprisoning him after he had been released on bail by a justice

of the peace, in violation of 42 U.S.C. § 1983.  In counts two

and three, the plaintiff claims that the town and its police

chief failed to exercise reasonable care in hiring, training,

supervising and disciplining Walter, thereby depriving him of his

constitutional rights as alleged in count one, in violation of 42

U.S.C. § 1983.  Count four, a state law claim, alleges that

Walter falsely imprisoned the plaintiff.  Count five, a state law claim, alleges that the town is vicariously liable for Walter's actions in falsely imprisoning the plaintiff.  The defendants removed the case to this court.

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law.  <u>Rodriquez-Garcia v. Davila</u>, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56 (c)).  The burden is on the moving party to establish the lack of a genuine, material factual issue, <u>Finn v. Consolidated Rail Corp.</u>, 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence.  <u>Caputo v. Boston Edison Co.</u>, 924 F.2d 11, 13 (1st Cir. 1991).  However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)).

FACTS

The salient material facts necessary to decide the legal issues presented by the pending motions are not in dispute.  The following statement of uncontested facts is taken from the

2

Memorandum of Law in Support of Plaintiff's Motion for Summary

Judgment (document no. 8).  The exhibits referred to are attached

to that memorandum.

On or about the evening of December 16, 1995, at approximately 10:00 p.m, the Defendant, Officer Richard Walter, an employee of the Town of Chichester Police Department, stopped the Plaintiff for suspected drunk driving while traveling eastbound on New Hampshire Route 4 in Chichester.  After confronting the Plaintiff and performing field sobriety tests, the Plaintiff was arrested for Driving While Intoxicated.  (See attached Affidavit of Wayne R. DeBlois, ¶5 and Police Report of Defendant Walter, Exhibit A.)

The Plaintiff was brought to the Chichester Police Department where he was formally charged and booked. At approximately 2:00 a.m. on December 17th, a bail commissioner, Evelyn Pike, was called.  Ms. Pike, a duly authorized Justice of the Peace and Bail Commissioner, came to the police department and released the Plaintiff on $750.00 personal recognizance bail.  (See attached Exhibit B.)

Despite the fact that the Plaintiff was released on personal recognizance bail, the Defendant Walter refused to release the Plaintiff from custody.  Rather, the Defendant Walter placed the Plaintiff in protective custody pursuant to RSA 172-B:3 and transported the Plaintiff to the Merrimack County House of Corrections where the Plaintiff was confined for several hours. (See attached Affidavit of Wayne R. DeBlois, ¶9 and Police Report of Defendant Walter, Exhibit A.)

The Plaintiff was acquitted of the Driving While Intoxicated charged by the Concord District Court on July 10, 1996.

The Defendant Walter was hired as a part-time Officer by the Town of Chichester in March 1994.  He became a full-time Officer in August 1994.  (See attached Exhibit C, p. 24.)  At the time of the Plaintiff's arrest, the Defendant Walter had attended

the part-time police training academy sponsored by the UNH Police Department and the New Hampshire Police Standards and Training Program.  (See attached Exhibit C, p.9.)  The Defendant Walter had not attended the full-time police academy at the time of the Plaintiff's arrest.  (See attached Exhibit C, p. 10-1.)  At the time of the Plaintiff's arrest, the Defendant Walter had received no formal or informal training regarding bail procedures and bail commissioners from the Defendant Emerson, the Chief of Police in Chichester, or the Defendant Town (See attached Exhibit C, p. 27-8.).  Nor had the Defendant Walter received any training regarding whether he could place an individual in protective custody upon release by a bail commissioner.  (See attached Exhibit C, p. 36-7.)

ISSUES

The plaintiff states that "[T]he main issue presented in this motion [for summary judgment] is whether a police officer can place an individual arrested for a criminal offense in protective custody pursuant to [N.H. Rev. Stat. Ann. § ("RSA")] 172-B:3 immediately after said person has been released on personal recognizance bail by a lawful order of a bail commissioner pursuant to RSA 597:1, 597:2, and 597:18.  The plaintiff maintains that as a matter of law the Defendants could not place the Plaintiff in protective custody immediately after he was released on personal recognizance by a lawful order of a bail commissioner."  Plaintiff's Motion for Summary Judgment (document no. 8) p. 2.  "The plaintiff maintains that the authority to make a determination whether an arrested person

4

poses a threat to himself or others, for purposes of release, rests solely with a duly appointed bail commissioner, and not with the arresting officer." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, p. 3. The plaintiff agrees that he is not challenging the constitutionality of New Hampshire's protective custody statute on its face but rather it is his position that "the application of RSA 172-B:3(I) to individuals who have been arrested and released on bail by a duly authorized bail commissioner is unconstitutional." Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 3. "The issue then becomes whether it was reasonable for the defendants to believe that it was lawful to place the plaintiff in protective custody after his release by a lawful order of a bail commissioner." Id. at p. 4.

The plaintiff has not challenged the fact that there was probable cause for his arrest and probable cause for taking him into protective custody.


DISCUSSION

The district courts of the state of New Hampshire are authorized to appoint justices of the peace to act as bail commissioners in criminal cases over which those courts have

5

jurisdiction. RSA 597:15-a.[1] With certain exceptions not relevant to this case, an individual arrested for an offense is eligible for release pending judicial proceedings, subject to the provisions of Chapter 597. RSA 597:1 (Supp.).

It is undisputed that based on the observations defendant Walter made of the plaintiff's driving and of the plaintiff's conduct after he was stopped, Walter had probable cause to arrest and charge the plaintiff with driving under the influence of liquor, first offense (RSA 265:82), and with resisting arrest or detention (RSA 642:2). <u>See</u> Exhibit A, State of New Hampshire Uniform Arrest Report. Following his arrest, the plaintiff ran away from Walter and headed for the woods. He was eventually located in the woods and was extremely cold. A search of the plaintiff's person produced a .32 caliber pistol that was loaded. He was taken to the police station and then transported to Concord Hospital for an examination in the emergency room because he continued to be cold. Following the examination, he was taken back to the police station and booked.

---

[1]     RSA 597:15-a  District Courts.  District courts may appoint 3 or more justices of the peace and quorum as commissioners authorized to fix and receive bail in criminal cases to be brought before said courts as hereafter provided.

Since the plaintiff had been arrested for bailable offenses, he was entitled to have bail set by a bail commissioner prior to his being arraigned. RSA 597:18.[2] Under RSA 597:2(II) (Supp.) the plaintiff was entitled to be released on his personal recognizance, or upon executing an unsecured appearance bond, "unless the court determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of the person or of the community," in which case certain other provisions of the bail statute become applicable. At 2:30 a.m. on the morning in question, the bail commissioner set bail at $750 personal recognizance. See Exhibit B. The record is barren concerning the commissioner's reasons for the bail that was set.

Following the plaintiff's release on bail, Walter took him into protective custody and transported him to the Merrimack County House of Correction where he was confined for several hours until released after being examined by a nurse.

RSA 172-B addresses the problems of alcoholism and alcohol abuse. When this chapter was enacted in 1979 the New Hampshire

---

[2]     RSA 597:18 Powers. On application of a person who is arrested for a bailable offense, at any time before his arraignment therefor, any commissioner may fix the amount of and receive bail in the same manner as the court might do, except in cases provided for by RSA 597:4.

Legislature declared the policy underlying the enactment to be as follows:

> It is the policy of the state of New Hampshire that alcoholism and alcohol abuse are correctly perceived as health and social problems rather than criminal transgressions against the welfare and morals of the public. The general court therefore declares that:
>
> I. Alcoholics and alcohol abusers shall no longer be subjected to criminal prosecution solely because of their consumption of alcoholic beverages or other behavior related to consumption which is not directly injurious to the welfare or property of the public.
>
> II. Alcoholics and alcohol abusers shall be treated as sick ad socially disabled persons and shall be provided adequate and appropriate medical and other humane rehabilitative services congruent with their needs.

In furtherance of this policy, police officers were given the authority to take intoxicated persons into protective custody for a limited period of time. RSA 172-B:3 provides, in relevant part:

> I. When a peace officer encounters a person who, in the judgment of the officer, is intoxicated as defined by RSA 172-B:1, X, the officers may take such person into protective custody and shall take whichever of the following actions is, in the judgment of the officer, the most appropriate to ensure the safety and welfare of the public, the individual, or both:
>
> (a) Assist the person, if he consents, to his home, an approved alcohol treatment program, or some other appropriate location; or
>
> (b) Release the person to some other person assuming responsibility for the intoxicated person; or

8

> (c) Lodge the person in a local jail or county correctional facility for said person's protection, for up to 24 hours or until the keeper of said jail or facility judges the person to be no longer intoxicated.

RSA 172-B:1(X) defines "intoxication" as "a condition in which the mental or physical functioning of an individual is substantially impaired as a result of the presence of alcohol in his system." RSA 172-B:1 (XIII) defines "protective custody" as "a civil status in which an incapacitated person is detained by a peace officer for the purpose of: (A) Assuring the safety of the individual or the public or both; and (B) Assisting the individual to return to a functional condition."

As previously noted, the plaintiff challenges the protective custody statute as applied to him under the circumstances of this case and does not mount a facial challenge to the statute. The parties agree that the protective custody statute is civil in nature. However, the nature of the seizure in question falls within the protections of the Fourth Amendment to the United States Constitution and therefore Walter must have had probable cause to seize the plaintiff at the time he was taken into protective custody. See Ahern v. O'Donnell, 109 F.3d 809, 817 (1st Cir. 1997). As previously noted, the plaintiff has not argued that probable cause for his arrest and protective custody seizure did not exist. While probable cause is not an issue in

9

this case, the court notes that given the totality of the circumstances related in Walter's report (Exhibit A), there was probable cause for both the arrest and the protective custody seizure.

The plaintiff contends that the protective custody statute does not apply to somebody who has been placed under arrest for a criminal offense but rather the statute applies only to those qualifying individuals who have not been arrested. However, there is nothing in the language of the statute which supports this contention. The statute focuses on the health and social problems posed by an individual who is substantially impaired by alcohol and provides a procedure whereby the safety of the public and the safety and well-being of the individual can be assured with minimal governmental intrusion. Not only can the statute be applied in situations where no criminal charge has been brought but also it can be applied in a complimentary manner in situations where a criminal charge has been brought. In the instant case, the protective custody statute was invoked after the plaintiff had been booked and then released on bail for the criminal charges, that is, after completion of the preliminary procedures required for the initiation of criminal charges.

The plaintiff next contends that once the bail commissioner released him on personal recognizance bail, Walter, as a matter

of law, could not invoke the protective custody statute because the commissioner had the sole authority to determine whether or not an individual poses a threat to himself or others.  The plaintiff is essentially arguing that he had a right to bail under the Eighth Amendment which was absolute, and that the setting of bail in the criminal proceeding in effect trumped the application of any law that might be invoked to commit him civilly.

There is no language in RSA 597, Bail and Recognizances, or in RSA 172-B, Alcoholism and Alcohol Abuse, which supports the plaintiff's contention that the bail commissioner has sole authority to determine whether or not an individual poses a threat to himself or others.  The bail commissioner has certain duties and responsibilities to carry out as enumerated in RSA 597 and presumably exercises judgment and discretion in determining what bail is appropriate under the circumstances.  The record in this case is barren as to what the bail commissioner knew about the plaintiff and his conduct on the evening and morning in question when bail was set.  The commissioner's exposure to the plaintiff was apparently relatively brief compared to the amount of time Walter had spent with him.  Either the commissioner determined based on her own observations that the plaintiff was no longer sufficiently intoxicated to pose a threat to himself or

11

others or she was satisfied that Walter would take appropriate action to see that the plaintiff was returned home or placed in protective custody. Under either situation, Walter had certain duties and responsibilities of his own to perform under RSA 172-B separate and apart from those performed by the commissioner under RSA 597 and he was entitled and authorized by law to exercise his independent judgment in determining whether or not to place the plaintiff in protective custody.

In addition, the plaintiff has not provided any authority for his contention that the right to bail is absolute and therefore trumps the application of any civil commitment statute. To the contrary, the Excessive Bail Clause of the Eighth Amendment does not establish an absolute right to bail. See discussion of this clause in United States v. Salerno, 481 U.S. 379, 752-755 (1987), and Carlson v. Landon, 342 U.S. 524, 544-546 (1952). Bail is subject to reasonable governmental regulation in furtherance of compelling governmental interests. It follows that if the right to bail itself is not absolute, then the right to remain released on bail, once bail has been set, is not absolute either and is subject to reasonable governmental regulation, such as the proper application of a civil commitment statute, in furtherance of compelling governmental interests.

Based on the foregoing, the court concludes that the

defendants did not violate any federal constitutional right of the plaintiff. Because the court has found that the defendants did not violate any federal constitutional right of the plaintiff, it is not necessary to reach the issue of whether or not Walter's actions were reasonable.

CONCLUSION

The plaintiff's motion for summary judgment is denied (document no. 8). The defendants' motion for summary judgment (document no. 9) is granted as to all the plaintiff's federal claims. The case is remanded to the Merrimack County Superior Court for consideration of any remaining claims based on state law. 28 U.S.C. § 1447(c).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

June 10, 1998

cc:   Roy W. Tilsley Jr., Esquire
      Steven E. Hengen, Esquire

13